ERASTUS REDMAN *versus* ALFRED P. ADAMS.

An order written thus:—"value received, pay to A. B. forty dollars and charge same against whatever amount may be due me, for my share of fish caught on board schooner Star," is an order for the payment of that sum absolutely, and is not limited to the proceeds of the drawer's share. An action can be maintained thereon in the name of an indorsee.

CASE STATED BY THE PARTIES.

ASSUMPSIT on an order of which the following is a copy:

"Castine, January 5, 1860.

"For value received, please pay to order of G. F. and C. W. Tilden forty dollars, and charge same against whatever amount may be due me for my share of fish caught on board schooner 'Morning Star,' for the fishing season of 1860.

"Yours, &c.,           "Frank R. Blake.

"To Messrs. Adams & Co.

"Accepted to pay.—Adams & Co."

If the plaintiff, as indorsee of the order, cannot maintain this action, he is to become nonsuit; otherwise the action is to stand for trial.

*Wiswell*, for plaintiff.

The bill, or order, upon which this action is brought, is in the usual form, negotiable and payable in money.

It is not payable out of any particular fund, or upon any contingency or condition. The drawer requests the drawees to pay a certain sum of money to a third person or his order, and charge the same against whatever amount may be due him for his share of fish caught on board sch. "Morning Star," for the fishing season of 1860. The order to pay is absolute, and not *provided* or *if* the drawees have any fish or the proceeds of any fish in their hands.

The drawer evidently in his order referred to his share of fish merely to show the consideration, and not for the purpose of rendering the payment contingent. Chitty on Bills, 139, note; *Sears* v. *Wright*, 24 Maine, 278.

" The statement of a particular fund in a bill of exchange will not vitiate it, if it be inserted *merely as a direction to the drawee how to reimburse himself.*" Chitty on Bills, 139.

In the case at bar, the amount would be payable, though the drawer, upon a settlement of the voyage, should have but a small share of fish, or indeed no share at all.

The acceptance of the order is absolute and unconditional. It is " accepted *to pay*," not on the happening of any event, or on any contingency. Adams & Co. promise to pay the order whether there were or should be any funds of the drawer in their hands or not. Chitty on Bills, 291–302.

The acceptance of the order is presumptive evidence that Adams & Co. had funds of the drawer in their hands. *Kendall* v. *Galvin*, 15 Maine, 131.

The acceptance of the order in this case is an unqualified admission of sufficient funds in the hands of the acceptors to pay the amount of the order.

*E. Hale*, for defendant.

The order is not negotiable; therefore the plaintiff, as indorsee, cannot maintain this action.

" The true test of the negotiability of a note," says C. J.

Redman *v.* Adams.

SHAW, "seems to be, whether the understanding of the promisor is to pay the amount at all events; not out of a particular fund, or on a contingency. If it were payable out of a particular fund, or on a contingency, it would not be negotiable." *Cotta* v. *Buck,* 7 Met., 588.

The instrument is considered as uncertain, contingent and void, as a bill or note, if the money is to be paid out of a specified fund which may never be realized, or be adequate to the purpose; "as out of rents, out of money had and received, out of my growing subsistence, out of the proceeds of goods when sold." Chitty on Bills and Notes, 5.

"A bill or note must not be made payable out of a particular fund." Byles on Bills, 165, and cases cited in note to the same effect; Bayley on Bills, 16.

The decisions in this State and Massachusetts are to the same effect, that a bill or note payable "out of" a particular fund, or in any way dependent on a contingency, is not negotiable. *Coolidge* v. *Ruggles,* 15 Mass., 387; *Bunker* v. *Atherton,* 35 Maine, 364; *Byram* v. *Hunter,* 36 Maine, 236.

The principle invoked applies to accepted bills or orders, as shown in *Jackman* v. *Bowker,* 4 Met., 236, although in that case the fund mentioned could be hardly called a *contingent* fund, in so strong a sense as in the case at bar, where it depended on the luck of a fishing cruise during the ensuing season.

To the same effect is a case cited in Bayley on Bills, 16, marginal note; *Dawkes* v. *Lord Deloraine.*

The language of the order in suit is, "pay to the order of, &c., and *charge same against whatever amount may be due me* for my share of fish caught on board schooner Morning Star, for the fishing season, 1860." This limits the fund, making it depend on the success of the fishing cruise. The words "charge same against whatever amount," &c., constitute a mercantile phrase more frequently used than the words "pay out of," but meaning the same, and, to the same extent, limiting the fund. This has been decided.

Where an order had these words, "pay to my order, five

thousand dollars, for value received, and *charge the same to my account* for transporting U. S. mail," it was held to be not negotiable so that the holder can sue in his own name. *Reeside* v. *Knox*, 2 Wheat., 253.

This case is cited in Byles on Bills, 165, and no distinction can be seen between it and the case at bar. It seems conclusive.

The only case where a fund is mentioned without destroying the negotiability, is where it is referred to as a fund fixed and certain, and only mentioned as a means by which the drawee may surely be indemnified. It cannot be claimed that these qualities apply to the fund referred to in the order in suit.

As the plaintiff can, then, only maintain his action by establishing the negotiability of the instrument in suit, the question becomes material, — "Did the acceptance change the nature of the order?" This point appears to be well settled.

The acceptance of an order not negotiable does not make it a bill of exchange, nor create a liability on the part of the acceptor. *Jackman* v. *Bowker*, 4 Met., 236.

If an instrument be not negotiable *ab initio*, no subsequent event can make it so. Bayley on Bills, 14, and cases cited in notes to same; *Jocelin* v. *Laserre*, Fost., 281; *Haydork* v. *Lynch*, Ld. Raym., 1563.

The language of the acceptance, "accepted to pay," means simply "accepted." There is no precise formula for such transactions; usually the name is written on the face of the bill under the word "accepted," but this may be varied. 1 Parsons on Contracts, 222; Byles on Bills, 254.

The declaration is, that, on the same day the order was made, and therefore, while the fund remained contingent, the order was accepted by defendant. The order, as it was written, was accepted. The acceptance could not vary it. The words "to pay," mean nothing; "accepted," alone, means as much. The others are surplusage.

The words "eventually accountable," after "accepted,"

were held to be surplusage, and in no manner restricting or qualifying the transfer, in *Donald* v. *Bailey*, 14 Maine, 101.

The words of the acceptance do not, therefore, entitle the plaintiff to his action on the order. Even if it should be claimed that the peculiar form of the acceptance makes a special contract, the plaintiff's declaration does not cover such contract. He declares only on a general and usual acceptance. He cannot, therefore, maintain his action. There is no privity between plaintiff and defendant, aside from the order, and therefore no other count covers any claim against the defendant. The action must be brought in the name of the payee, which would entitle the defendant to show the extent of the fund.

The opinion of the Court was drawn up by

BARROWS, J. — Is the instrument declared on negotiable, so that an action may be maintained upon it in the name of an indorsee against either of the prior parties? What constitutes a negotiable draft? It must be a written order from one party to another for the payment of a sum certain of money only, and that absolutely and without contingency to a third party or his order or bearer.

It has often been held that a bill or note payable out of a particular limited fund is not negotiable, but there is a difference between making the money payable out of a particular fund, and a mere reference to the fund in the draft to call the attention of the drawee to his means of reimbursement.

In this case, the order requires the drawees to pay to the order of G. F. & C. W. Tilden the sum of forty dollars, absolutely and without contingency. A means of reimbursement is indicated to the drawees in the words appended, " and charge the same against whatever amount may be due me for my share of fish," &c., but the payment of the order is not made to depend upon his having any share of fish, nor is the call limited to the proceeds thereof.

In *Reeside* v. *Knox*, 2 Wheaton, 253, cited by defend-

ant's counsel, the order was drawn on the Postmaster General of the United States, and in his official capacity. The Court expressly say, "no objection would lie to the form of the bill in the present instance, *were the drawee an individual.* It is matter of public notoriety that government accepts for no more, and is bound for no more, whatever be the form of the acceptance, than it has in its hands, and that it treats a bill drawn on it as no more than an assignment or order of transfer." In that case, the language of the draft was, "pay to my order five thousand dollars, for value received, and charge the same to my account, for transporting the U. S. Mail." No substantial difference in form between that order and the one under consideration is observed. Such an order, the Court in that case say, would be negotiable, but for the fact of its being drawn on a government officer.

According to the agreement of the parties,

*The case is to stand for trial.*

APPLETON, C. J., CUTTING, DAVIS, KENT and DICKERSON, JJ., concurred.