JOHN WHITE *vs.* JAMES N. CUSHING.

Piscataquis.    Opinion January`13, 1896.

*Bills and Notes.    Order.    Negotiability.    Savings Bank.*

An order in these words:

" $120.                                    Dover, Oct. 27, 1893.
              Piscataquis Savings Bank.
"Pay James Lawler, or order, one hundred and twenty dollars, and charge to my account on book No.——

                                    J. N. Cushing."
" Witness—
" The bank book of the depositor must accompany this order;" is not a negotiable draft or order such as will authorize a suit to be brought upon it in the name of the indorsee.

The words upon the face of the order below the signature of the drawer, being there at the time of its inception, became a substantive part of it and qualified its terms as if inserted in the body of the instrument.

They render the order payable upon a contingency, and embarrass and restrict its free circulation for commercial purposes, rendering it not negotiable.

ON EXCEPTIONS.

This was assumpsit on an order, the terms of which appear in the head-note. The order was indorsed in blank by the payee and Samuel Lewis.

The words "The Bank Book of the depositor must accompany this order" were printed in small capitals on the lower margin of the order, under the signature of J. N. Cushing.

There was evidence tending to show that plaintiff bought the order of James Lawler, the payee, on or before the 21st day of November, 1893. The defendant asked the court to rule that the order was not negotiable, and an action could not be maintained in the name of White, but the presiding justice ruled, as

matter of law, that the order was negotiable, and the action could be maintained in the name of White by a simple indorse-ment by Lawler.

There was evidence tending to show that Lawler, the payee, obtained the order from Cushing, the maker, by fraud, and the defendant asked the court to rule that this defense was open to him in this action, although White might not have had knowl-edge of the claim of fraud when he bought the order from Lawler; but the presiding justice ruled that the order had all the characteristics of a check, and was not overdue until at least thirty days after its date, and that if the plaintiff bought the order within thirty days from its date for a valuable consid-eration in the ordinary course of business without actual notice of the fraud, he, the plaintiff, was an innocent purchaser, and the defendant could not set up fraud in the procuring of the order as against White.

There was evidence tending to show that on the twenty-eighth day of October, A. D., 1893, and before the order was nego-tiated by Lawler to anybody, Lawler took the order to the Piscataquis Savings Bank and demanded payment of the same of said bank, and that the bank refused to pay the same until after thirty days' notice had been given, and refused to pay the same unless it was accompanied by the bank book of the deposi-tor, Cushing, as required in the order.

And there was evidence tending to show that the plaintiff, White, knew when he bought the order that this payment had been demanded by Lawler, and payment refused by the bank for the reasons above stated, and the defendant asked the court to rule that the order was then an overdue order, and that when White got it afterwards of Lawler it was subject to all the equities in White's hands that it would be in Lawler's; but the court ruled otherwise.

There was evidence tending to show that the consideration of the order was for dry goods sold by said Lawler to Cushing while traveling from town to town, and from place to place in the town of Charleston, in violation of the statute of this State, unless said Lawler had a license so to do.

There was evidence tending to show that White knew that the note was given for goods sold by Lawler while thus traveling.

There was no evidence that Lawler had any license to so sell, and the defendant asked the presiding justice to rule that said sale was in violation of the statute, and that White had notice of the same, and could not recover for that reason; but the presiding justice ruled that, so far as White was concerned, he had a right to assume that Lawler had a license for the purpose of selling said goods.

To all these rulings, and refusals to rule, the defendant excepted.

*T. W. Vose,* for plaintiff.

To be within the rule that prevents negotiability, the contingency or conditions must be such as will embarrass the paper in its course of circulation; but a memorandum which is merely directory or collateral will not affect it. *Overton* v. *Tyler*, 4 Pa. St. 346; *Hodges* v. *Shuler*, 22 N. Y. Reg. 114; *Arnold* v. *Rock River Valley Union Co.* 5 Duer, 207; *Hostater* v. *Wilson*, 36 Barb. 307; *Dennett* v. *Goodwin*, 32 Maine, 44; *Smilie* v. *Stevens*, 39 Vt. 315; *Dorsey* v. *Wolff*, 142 Ill. 589; S. C. 34 Am. St. Rep. 99; *Sumner* v. *Hibbard*, 38 N. E. Rep. 899.

The words in the margin of this order are no part of the contract between the maker or drawer and the payee; they create no contingency between them. The fraudulent acts or intent of the maker of otherwise negotiable paper will not defeat its negotiability. That this exact question has not arisen oftener is of some weight in favor of the plaintiff. The cases in Penna. on mercantile law are not cited with great confidence. For a summary of cases see Edwards' Bills and Notes, p. * 141; Ames' Bills and Notes; Big. L. C. Bills and Notes; *Dorsey* v. *Wolff*, supra; *Cota* v. *Buck*, 7 Met. 588; *Byram* v. *Hunter*, 36 Maine, 220.

*J. B. Peaks,* for defendant.

SITTING: FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

FOSTER, J.    The plaintiff sues as indorsee of an order signed by the defendant of the following tenor :

"$120.                              Dover, Oct. 27th, 1893.

Piscataquis Savings Bank.

"Pay James Lawler, or order, one hundred and twenty dollars, and charge to my account on book No.——

J. N. Cushing."

"Witness——

"The bank book of the depositor must accompany this order."

The order was indorsed in blank on the back by James Lawler and Samuel Lewis, and the plaintiff claimed to recover against the defendant as upon a negotiable instrument. The real question presented is whether the instrument declared on is negotiable, so that an action may be maintained upon it in the name of the indorsee.

To constitute a negotiable draft or order, it must be a written order from one party to another for the payment of a certain sum of money, and that absolutely, and without any contingency that would embarrass its circulation, to a third party or his order or bearer.

It has often been held that a bill or note is not negotiable if made payable out of a particular fund. But there is a distinction between such instruments made payable out of a particular fund, and those that are simply chargeable to a particular account. In the latter case, the payment is not made to depend upon the adequacy of that fund, the only purpose being to inform the drawee as to his means of reimbursement, and the negotiability of the instrument is not affected by it.

The objection that is raised to the negotiability of this instrument is, not that it is made payable out of a particular fund, but that it is subject to such a contingency as necessarily embarrasses its circulation and imposes a restraint upon its negotiability, by means of these words contained upon the face of the order : "The bank book of the depositor must accompany this order." Although these words are upon the face of the order below the signature of the drawer, they were there at the time of its inception, became a substantive part of it and qualified its

terms as if they had been inserted in the body of the instrument. *Littlefield* v. *Coombs*, 71 Maine, 110; *Cushing* v. *Field*, 70 Maine, 50, 54; *Johnson* v. *Heagan*, 23 Maine, 329; *Barnard* v. *Cushing*, 4 Metcalf, 230; *Heywood* v. *Perrin*, 10 Pick. 228; *Benedict* v. *Cowden*, 49 N. Y. 396; *Costelo* v. *Crowell*, 127 Mass. 293, and cases there cited.

Was the order negotiable? The answer to that depends upon the effect of the words "The bank book of the depositor must accompany this order." If not negotiable, the plaintiff as indorsee can not maintain an action upon it. *Noyes* v. *Gilman*, 65 Maine, 589. If their effect is such as constitute a contingency in relation to the payment of the order, dependent upon the production of the drawer's bank book by the holder or indorsee of the order, then they must be regarded as such an embarrassment to the negotiation of the order, and such a restriction upon its circulation for commercial purposes as to render it non-negotiable.

Without these words the order is payable absolutely, and there is no apparent uncertainty affecting its negotiability. With them, the order is payable only upon contingency, or condition, and that is upon the production of the drawer's bank book. This is rendered imperative from the language employed, and the bank upon which the order is drawn, would have the right to insist upon such production of the book in compliance with the terms of the order; and the case shows that it has refused payment upon presentation of the order for the reason that it was not accompanied by the bank book. It cannot, therefore, be regarded as payable absolutely and without any contingency that would embarrass its circulation. The drawer has it in his power to defeat its payment by withholding the bank book. Certainly the bank book of the depositor is within his own control rather than that of the indorsee of this order.

It was the necessity of certainty and precision in mercantile affairs and the inconveniences which would result if commercial paper was incumbered with conditions and contingencies, that led to the establishment of an inflexible rule that to be negotiable they must be payable absolutely and without any conditions or contin-

gencies to embarrass their circulation. *American Ex. Bank* v. *Blanchard*, 7 Allen, 333. In that case the words, "subject to the policy," being included in a promissory note, were held to render the promise conditional and not absolute, and so the note was held not to be negotiable. *Noyes* v. *Gilman*, 65 Maine, 589, 591; *Hubbard* v. *Mosely*, 11 Gray, 170.

A case in every essential like the one we are considering was before the Supreme Court of Pennsylvania in 1891. A fac simile of the order is given in the opinion. No two cases could be nearer alike. There, as here, the order was drawn on a savings bank. The suit was by the indorsee against the drawer as in this case. There, as here, the order contained a statement upon its face, but below the signature of the drawer, that the "Deposit book must be at bank before money can be paid." In discussing the question of its negotiability cases are cited from the courts of Maine, Vermont, Massachusetts and New York, as well as from Pennsylvania. In the course of the opinion the court say : " It sufficiently appears from the memoranda on its face that it was drawn on a specially deposited fund held by the bank subject to certain rules and regulations, in force between it and the depositor, requiring certain things to be done before payment could be required, viz: previous notice of depositor's intention to draw upon the fund, return of the notice ticket with the order to pay, and presentation of the deposit book at the bank, so that the payment might be entered therein." . . . "It is, in substance, merely an order on the dollar savings bank to pay J. W. Quinn, or order, nine hundred dollars in nine weeks from date, or February 1, 1888, provided he or his transferee present to the bank, with the order, the notice ticket, and also produce at and before the time of payment the drawer's deposit book. As already remarked, these are undoubtedly pre-requisites which restrain or qualify the generality of the order to pay as contained in the body of the instrument. They are also pre-requisites with which it may be difficult, if not sometimes impossible, for the payee, transferee, or holder of such an order to comply." *Iron City Nat. Bank* v. *McCord*, 139 Pa. St. 52 (23 Am. State Rep. 166).

The order in question was drawn upon a savings bank, and it is common knowledge that all such banks in this State have a by-law which all depositors are required to subscribe to, that "no money shall be paid to any person without the production of the original book that such payment may be entered therein."

This court in the case of *Sullivan* v. *Lewiston Inst. for Savings*, 56 Maine, 507, has considered the purpose and necessity of these salutary regulations. We should be slow to countenance any departure from this rule needed for the protection of depositors in our savings banks now numbering more than 160,000, and where deposits aggregate nearly $60,000,000.

Inasmuch as this order is not negotiable and no suit can be maintained upon it by the plaintiff as indorsee, it becomes unnecessary to consider the other exceptions.

*Exceptions sustained.*